UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


VICKI CRAFT,

               Plaintiff,                                          Hon. Janet T. Neff

v.                                                      Case No. 1:08-CV-1151

COMMISSIONER OF SOCIAL
SECURITY,

               Defendant.

_____/


## REPORT AND RECOMMENDATION

       This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C.

§ 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's

claims for Disability Insurance Benefits (DIB) under Title II of the Social Security Act. Section

405(g) limits the Court to a review of the administrative record, and provides that if the

Commissioner's decision is supported by substantial evidence, it shall be conclusive. Pursuant to

28 U.S.C. § 636(b)(1)(B), authorizing United States Magistrate Judges to submit proposed findings

of fact and recommendations for disposition of social security appeals, the undersigned recommends

that the Commissioner's decision be **affirmed**.

## STANDARD OF REVIEW

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This

standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## **PROCEDURAL POSTURE**

Plaintiff was 47 years of age at the time of the ALJ's decision. (Tr. 68). She successfully completed high school and worked previously as a housekeeper and landscaper. (Tr. 144, 149, 156-60).

Plaintiff applied for benefits on December 8, 2001, alleging that she had been disabled since September 6, 1994, due to bone and disc disease, hip impairment, and loss of grip strength in her left hand. (Tr. 126-28, 143). Plaintiff's application was denied, after which time she requested a hearing before an Administrative Law Judge (ALJ). (Tr. 41-125). On May 22, 2003, Plaintiff appeared before ALJ Basil Blair, with testimony being offered by Plaintiff and vocational expert, Richard Riedl. (Tr. 406-27). In a written decision dated October 29, 2003, the ALJ determined that Plaintiff was not disabled. (Tr. 57-63). The Appeals Council remanded the matter for further consideration of Plaintiff's work history and residual functional capacity. (Tr. 99-101).

On December 21, 2004, Plaintiff appeared before ALJ Patricia Hartman, with testimony being offered by Plaintiff and vocational expert, Sharon Princer. (Tr.428-56). In a written decision dated June 21, 2005, the ALJ determined that Plaintiff was not disabled. (Tr. 67-73). The Appeals Council remanded the matter for further consideration of Plaintiff's pain and credibility. (Tr. 117-18). On January 25, 2007, Plaintiff appeared before ALJ Hartman, with testimony being offered by Plaintiff and vocational expert, Sharon Princer. (Tr. 457-86). In a written decision dated

April 16, 2007, the ALJ determined that Plaintiff was not disabled. (Tr. 20-30). The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter. (Tr. 6-10). Plaintiff subsequently initiated this appeal pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

## RELEVANT MEDICAL HISTORY

X-rays of Plaintiff's pelvis, taken on December 30, 2001, were "normal." (Tr. 211). X-rays of Plaintiff's thoracic spine and lumbar spine, taken the same day, revealed "mild" degenerative changes. (Tr. 211).

On January 22, 2002, Thelma Eastman completed a questionnaire regarding Plaintiff's activities. (Tr. 171-77). Eastman reported that on a typical day, Plaintiff cares for her children, prepares meals, and washes laundry. (Tr. 171). She reported that Plaintiff drives, cleans her house, mows her lawn, plays cards, watches television, and completes crossword puzzles. (Tr. 171-74).

On February 22, 2002, Plaintiff was examined by Dr. Carla Guggenheim. (Tr. 195). Plaintiff reported that she was disabled due to spinal disc disease and hip difficulties. (Tr. 195). Plaintiff also reported that she was experiencing difficulty laying down, lifting items, and lifting her arm above her head. (Tr. 195). Plaintiff exhibited "full" range of motion in her hips, cervical spine, knees, shoulders, and elbows. (Tr. 196). Plaintiff used a cane and walked with a "slight limp on the left," but exhibited "poor and inconsistent effort" during gait testing. (Tr. 196). Dr. Guggenheim observed that there was no "clinical evidence" that Plaintiff required a cane or other support to ambulate. (Tr. 198). The doctor reported that with physical therapy, Plaintiff would be able to "walk

better." (Tr. 198).

X-rays of Plaintiff's left and right knees, taken on September 14, 2002, were "negative" with no evidence of fracture, dislocation, bony abnormality, soft tissue mass, calcification, effusion, or misalignment. (Tr. 210). X-rays of Plaintiff's lumbar spine, taken the same day, revealed degenerative changes at L5-S1, "unchanged since the previous study." (Tr. 218).

X-rays of Plaintiff's cervical spine, taken on February 7, 2004, revealed degenerative changes, but no evidence of "destructive changes" or loss of "normal stature." (Tr. 233). X-rays of Plaintiff's right shoulder, taken the same day, were "normal." (Tr. 233). X-rays of Plaintiff's lumbar spine, taken on March 29, 2004, revealed degenerative changes, "with no significant change from the prior study." (Tr. 247). X-rays of Plaintiff's hips, taken the same day, were "normal." (Tr. 247).

On January 27, 2005, Plaintiff participated in a consultive examination conducted by Dr. Helene Jones. (Tr. 248-51). Plaintiff exhibited normal range of motion in her neck and right shoulder. (Tr. 250). An examination of Plaintiff's left shoulder revealed "mild" tenderness and "80% normal range of motion." (Tr. 250). When asked to demonstrate range of motion in her back, Plaintiff "defer[red], saying that she "just can't move any more." (Tr. 250). The doctor observed, however, that Plaintiff was able "to demonstrate a limited amount of range of motion of the shoulder and also the lower back." (Tr. 250). Straight leg raising was negative and Plaintiff was able to get on and off the examination table without difficulty. (Tr. 250). She exhibited normal range of motion in her hips, knees, ankles, and feet. (Tr. 250). Plaintiff exhibited "inconsistent antalgia" and Dr. Jones concluded that Plaintiff could discontinue use of her cane with "some physical therapy and some increased conditioning." (Tr. 250). Plaintiff exhibited no motor, sensory, or cerebellar abnormalities. (Tr. 250). Dr. Jones reported that Plaintiff was able to occasionally lift/carry 10

pounds and stand/walk "at least" two hours during an 8-hour workday. (Tr. 252). The doctor reported that Plaintiff's ability to sit was unaffected by her impairments. (Tr. 253).

Treatment notes dated March 28, 2006, indicate that Plaintiff "walks [her] kids to school," a distance of approximately one to one and one-half miles. (Tr. 330). On April 23, 2006, Plaintiff participated in an MRI examination of her lumbosacral spine, the results of which revealed "mild degenerative changes most pronounced at L5-S1." The results were "otherwise unremarkable." (Tr. 268).

On October 31, 2006, Plaintiff participated in a neurological evaluation conducted by Dr. Andrea Bozoki at the Michigan State University Department of Neurology and Ophthalmology. (Tr. 304-08). Plaintiff reported that she was experiencing back pain and headaches. (Tr. 304). The results of a physical examination were unremarkable, with no evidence of strength, reflex, or sensory abnormality. (Tr. 306-07). Plaintiff also participated in a nerve conduction study, the results of which were "normal," with no evidence of lumbar radiculopathy, lumbosacral plexopathy, or peripheral polyneuropathy. (Tr. 303). Dr. Bozoki concluded that Plaintiff's back pain was the result of "musculoskeletal pain or strain." (Tr. 307).

On February 26, 2007, Dr. Peter Cooke completed a report concerning Plaintiff's physical limitations. (Tr. 338-41). The doctor reported that Plaintiff can sit, stand, and walk for 30 minutes each without interruption. (Tr. 338). The doctor reported that during an 8-hour workday, Plaintiff can sit for one hour, stand for three hours, and walk for three hours. (Tr. 338). Dr. Cooke reported that Plaintiff can occasionally lift/carry/push 10 pounds. (Tr. 339). The doctor reported that Plaintiff can occasionally bend, twist, reach above shoulder level, and perform simple grasping and fine manipulation activities, but can never squat, kneel, crawl, stoop, or climb stairs/ladders. (Tr.

339-40).

## <u>ANALYSIS OF THE ALJ'S DECISION</u>

The ALJ determined that Plaintiff suffers from degenerative disc disease and post-left shoulder surgery, severe impairments that whether considered alone or in combination with other impairments, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (Tr. 22-25). The ALJ concluded that while Plaintiff was unable to perform her past relevant work, there existed a significant number of jobs which she could perform despite her limitations. (Tr. 25-30). Accordingly, the ALJ concluded that Plaintiff was not disabled as defined by the Social Security Act.

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[1] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining her residual

---

[1] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. 404.1520(f)).

functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and she can satisfy her burden by demonstrating that her impairments are so severe that she is unable to perform her previous work, and cannot, considering her age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528.

As noted, the Commissioner has established a five-step disability determination procedure. While the burden of proof shifts to the Commissioner at step five, Plaintiff bears the burden of proof through step four of the procedure, the point at which her residual functioning capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

With respect to Plaintiff's residual functional capacity, the ALJ determined that Plaintiff retained the capacity to perform sedentary work subject to the following limitations: (1) Plaintiff must be able to sit/stand at will; (2) she can never climb ladders, ropes or scaffolds; (3) she cannot reach, push, or pull with her left upper extremity; (4) she cannot work with dangerous unprotected machinery or work at unprotected heights; (5) she can never crawl; and (6) she can rarely kneel or crouch. (Tr. 25). After reviewing the relevant medical evidence, the Court concludes that the ALJ's determination as to Plaintiff's RFC is supported by substantial evidence.

The ALJ determined that Plaintiff was unable to perform her past relevant work, at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that a significant number of jobs exist in the national economy which Plaintiff could perform, her

limitations notwithstanding. *See Richardson*, 735 F.2d at 964. While the ALJ is not required to question a vocational expert on this issue, "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform <u>specific</u> jobs" is needed to meet the burden. *O'Banner v. Sec'y of Health and Human Services*, 587 F.2d 321, 323 (6th Cir. 1978) (emphasis added). This standard requires more than mere intuition or conjecture by the ALJ that the claimant can perform specific jobs in the national economy. *See Richardson*, 735 F.2d at 964. Accordingly, ALJs routinely question vocational experts in an attempt to determine whether there exist a significant number of jobs which a particular claimant can perform, his limitations notwithstanding. Such was the case here, as the ALJ questioned vocational expert Sharon Princer.

The vocational expert testified that there existed approximately 6,200 jobs in the lower peninsula of the state of Michigan which an individual with Plaintiff's RFC could perform, such limitations notwithstanding. (Tr. 484). This represents a significant number of jobs. *See Born v. Sec'y of Health and Human Services*, 923 F.2d 1168, 1174 (6th Cir. 1990); *Hall v. Bowen*, 837 F.2d 272, 274 (6th Cir. 1988).

a.     The ALJ Properly Assessed the Medical Evidence

Plaintiff asserts that the ALJ failed to accord sufficient weight to certain opinions expressed by Dr. Cooke. Plaintiff asserts that because Dr. Cooke was her treating physician, the ALJ was obligated to accord controlling weight to his opinions.

The treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and her maladies generally possess significant insight into her medical condition. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). An ALJ must,

therefore, "give the opinion of a treating source controlling weight if he finds the opinion 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and 'not inconsistent with the other substantial evidence in [the] case record.'" *Wilson v. Commissioner of Social Security*, 378 F.3d 541, 544 (6th Cir. 2004).

Such deference is appropriate, however, only where the particular opinion "is based upon sufficient medical data." *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)). The ALJ may reject the opinion of a treating physician where such is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial medical evidence. *See Cohen*, 964 F.2d at 528; *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)); *Cutlip v. Sec'y of Health and Human Services*, 25 F.3d 284, 286-87 (6th Cir. 1994).

If an ALJ accords less than controlling weight to a treating source's opinion, the ALJ must "give good reasons" for doing so. *Wilson*, 378 F.3d at 544. In articulating such reasons, the ALJ must consider the following factors: (1) length of the treatment relationship and frequency of the examination, (2) nature and extent of the treatment relationship, (3) supportability of the opinion, (4) consistency of the opinion with the record as a whole, (5) the specialization of the treating source, and (6) other relevant factors. *See* 20 C.F.R. §§ 404.1527, 416.927; *see also*, *Wilson*, 378 F.3d at 544. The ALJ is not required, however, to explicitly discuss each of these factors. *See, e.g., Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007); *Undheim v. Barnhart*, 214 Fed. Appx. 448, 450 (5th Cir., Jan. 19, 2007). Instead, the record must reflect that the ALJ considered those factors relevant

to her assessment.  *See Oldham*, 509 F.3d at 1258; *Undheim*, 214 Fed. Appx. at 450.

As discussed above, Dr. Cooke reported that Plaintiff can sit, stand, and walk for 30 minutes each without interruption and occasionally lift/carry/push 10 pounds.  The doctor reported that during an 8-hour workday, Plaintiff can sit for one hour, stand for three hours, and walk for three hours.  The doctor further reported that Plaintiff can occasionally bend, twist, reach above shoulder level, and perform simple grasping and fine manipulation activities, but can never squat, kneel, crawl, stoop, or climb stairs/ladders.  The ALJ discounted Dr. Cooke's opinion "because there is no medical evidence to support his opinion of the claimant's physical limitations."  (Tr. 28).

As detailed above, Dr. Cooke's opinion is contradicted by substantial evidence of record.  In her opinion, the ALJ stated that she "considered opinion evidence in accordance with the requirements of 20 CFR § 416.927 and SSRs 96-2p, 96-5p, 96-6p and 06-3p."  (Tr. 23).  An examination of the ALJ's opinion reveals that she considered the six factors above.  While the ALJ may not have addressed each factor individually, such are incorporated in her discussion.  In sum, the ALJ articulated good reasons, supported by substantial evidence, for affording less than controlling weight to Dr. Cook's opinion.

b.     The ALJ Properly Evaluated Plaintiff's Credibility

At the administrative hearing, Plaintiff testified that "both of [her] hips pop out of place. . .[o]nce a week, sometimes three or four times a day."  (Tr. 467-68).  Plaintiff reported that "five to seven days" every week she experiences 10/10 pain.  (Tr. 469).  Plaintiff also testified that while she performs various household chores each day (e.g., vacuum, dust, mop, wash dishes, and prepare meals), she has to "scatter the housework throughout the day" because of her pain and

limitations. (Tr. 476-77). The ALJ discounted Plaintiff's subjective allegations, finding that Plaintiff's "statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely credible." (Tr. 27). Plaintiff asserts that the ALJ failed to give proper weight to her subjective allegations.

As the Sixth Circuit has long recognized, "pain alone, if the result of a medical impairment, *may* be severe enough to constitute disability." *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984) (emphasis added). As the relevant Social Security regulations make clear, however, a claimant's "statements about [her] pain or other symptoms will not alone establish that [she is] disabled." 20 C.F.R. § 404.1529(a); *see also*, *Walters v. Commissioner of Social Security*, 127 F.3d 525, 531 (6th Cir. 1997) (quoting 20 C.F.R. § 404.1529(a)). Instead, as the Sixth Circuit has established, a claimant's assertions of disabling pain and limitation are evaluated pursuant to the following standard:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Walters*, 127 F.3d at 531. This standard is often referred to as the *Duncan* standard. *See Workman v. Commissioner of Social Security*, 2004 WL 1745782 at *6 (6th Cir., July 29, 2004).

Accordingly, as the Sixth Circuit has repeatedly held, "subjective complaints may support a finding of disability only where objective medical evidence confirms the severity of the alleged symptoms." *Id.* (citing *Blankenship v. Bowen*, 874 F.2d 1116, 1123 (6th Cir. 1989)). However, where the objective medical evidence fails to confirm the severity of a claimant's

subjective allegations, the ALJ "has the power and discretion to weigh all of the evidence and to resolve the significant conflicts in the administrative record." *Workman*, 2004 WL 1745782 at *6 (citing *Walters*, 127 F.3d at 531).

In this respect, it is recognized that the ALJ's credibility assessment "must be accorded great weight and deference." *Workman*, 2004 WL 1745782 at *6 (citing *Walters*, 127 F.3d at 531); *see also*, *Heston v. Commissioner of Social Security*, 245 F.3d 528, 536 (6th Cir. 2001) ("[i]t is for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony"). It is not for this Court to reevaluate such evidence anew, and so long as the ALJ's determination is supported by substantial evidence, it must stand. The ALJ found Plaintiff's subjective allegations not to be fully credible, a finding that should not be lightly disregarded. *See Varley v. Sec'y of Health and Human Services*, 820 F.2d 777, 780 (6th Cir. 1987).

The ALJ examined the record in great detail and engaged in a lengthy discussion as to why she found Plaintiff less than credible. As the ALJ observed, the objective medical evidence does not support Plaintiff's subjective allegations of pain and limitation. Plaintiff's subjective allegations are also inconsistent with her level of treatment. For example, Plaintiff reported that she experiences 10/10 pain 5-7 days weekly and that "both of [her] hips pop out of place. . .[o]nce a week, sometimes three or four times a day." Plaintiff also testified, however, that the only treatment she has received is physical therapy and medication, which often relieves her pain. (Tr. 468-73). As the ALJ also observed, Plaintiff's reported activities are inconsistent with her allegations of disabling pain and limitation. In sum, the undersigned concludes that there exists substantial evidence to support the ALJ's credibility determination.

c.    Plaintiff is not Entitled to Remand

As part of her request to obtain review of the ALJ's decision, Plaintiff submitted to the Appeals Council additional evidence which was not presented to the ALJ. (Tr. 352-405). The Appeals Council received the evidence into the record and considered it before declining to review the ALJ's determination. (Tr. 6-10). This Court, however, is precluded from considering such material. In *Cline v. Commissioner of Social Security*, 96 F.3d 146 (6th Cir. 1996), the Sixth Circuit indicated that where the Appeals Council considers new evidence that was not before the ALJ, but nonetheless declines to review the ALJ's determination, the district court cannot consider such evidence when adjudicating the claimant's appeal of the ALJ's determination. *Id.* at 148; *see also*, *Bass v. McMahon*, 499 F.3d 506, 512-13 (6th Cir. 2007) (quoting *Cline*, 96 F.3d at 148).

If Plaintiff can demonstrate, however, that this evidence is new and material, and that good cause existed for not presenting it in the prior proceeding, the Court can remand the case for further proceedings during which this new evidence can be considered. *See Cline*, 96 F.3d at 148. To satisfy the materiality requirement, Plaintiff must show that there exists a reasonable probability that the Commissioner would have reached a different result if presented with the new evidence. *See McMahon*, 499 F.3d at 513.

The evidence in question reveals the following. Follow up examinations at the Michigan State University Department of Neurology and Ophthalmology, between January 18, 2007, and August 9, 2007, revealed that Plaintiff's back pain and headaches improved with medication. (Tr. 366-80).

On April 29, 2008, Plaintiff participated in an electrodiagnostic examination, the results of which revealed "no electrodiagnostic evidence" of left or right lumbosacral radculopathy,

left or right tibial neuropathy, or peripheral neuropathy. (Tr. 387). The doctor conducting the test reported that Plaintiff's subjective complaints were inconsistent with the results of the examination. (Tr. 387). On September 2, 2008, Plaintiff participated in an MRI examination of her cervical spine, the results of which revealed spondylosis, but "no abnormal signal." (Tr. 386).

On October 21, 2008, Dr. Cooke completed another report concerning Plaintiff's physical limitations. (Tr. 402-05). The doctor reported that Plaintiff could sit for only 10-20 minutes and stand for 15 minutes without interruption. (Tr. 402). Dr. Cooke reported that during an 8-hour workday, Plaintiff can sit for three hours and stand for one hour. (Tr. 402). As for Plaintiff's ability to walk, the doctor reported that Plaintiff can "never" walk. (Tr. 402). The doctor also reported that Plaintiff is unable to lift, carry, or push any amount of weight. (Tr. 403). The doctor reported that Plaintiff can "never" perform any simple grasping or fine manipulation activities. (Tr. 403). Dr. Cooke also reported that Plaintiff can "never" bend, twist, squat, kneel, crawl, stoop, reach above shoulder level, or climb. (Tr. 404).

Even if there exists good cause for not submitting this evidence to the ALJ, it is not reasonable to assert that consideration of such would have led to a different result. Accordingly, the Court is precluded from considering this evidence and, furthermore, there exists no basis for remanding this matter for its further consideration.

## CONCLUSION

For the reasons articulated herein, the undersigned concludes that the ALJ's decision adheres to the proper legal standards and is supported by substantial evidence. Accordingly, it is recommended that the Commissioner's decision be **affirmed**.

OBJECTIONS to this report and recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within such time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,

Date:  January 22, 2010

  /s/ Ellen S. Carmody                    
ELLEN S. CARMODY
United States Magistrate Judge